UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NORMAN M. HURDLESTON, via his :
guardian ad litem Chris        :
Hurdleston                     :
                               :    HONORABLE JOSEPH E. IRENAS
          Plaintiff,           :
                               :    CIV. NO. 07-3289 (JEI/KMW)
     v.                        :
                               :
NEW CENTURY FINANCIAL          :    **OPINION**
SERVICES, INC., and PRESSLER   :
& PRESSLER, LLP                :
                               :
          Defendants.          :


**APPEARANCES:**

CURTIN & HEEFNER, LLP
By:  Bonnie S. Stein, Esq., Michael P. Maguire, Esq.
250 N. Pennsylvania Avenue
Morrisville, PA 19067
     Counsel for Plaintiff

PRESSLER & PRESSLER, LLP
By:  Mitchell L. Williamson
16 Wing Drive
Cedar Knolls, NJ 07927
     AND
MARSHALL, DENNAHEY, WARNER, COLEMAN & GOGGEN, PC
By:  Howard I. Mankoff
425 Eagle Rock Avenue
Suite 302
Roseland, NJ 07068
     Counsel of Defendants


**IRENAS,** Senior District Judge:

     Presently before the Court are Defendants' Motion for

Summary Judgment (Docket No. 22), Defendants' Motion for

Sanctions (Docket No. 26), and Plaintiffs' Motion for Summary

Judgment on Liability Only (Docket No. 30).  The Court has

1

reviewed the submissions of the parties, and for the reasons set forth below, Defendants' Motion for Summary Judgment will be granted, and Defendants' Motion for Sanctions and Plaintiff's Motion for Summary Judgment on Liability only will be denied.[1]


## I.

Plaintiff, Norman Hurdleston ("Norman"), is a 47 year old man.  He was diagnosed at an early age with mild cerebral palsy and organic brain syndrome/organic cerebral dysfunction.  (Pl. Ex. A.)  Norman attended the Bancroft School, which is a school for children with developmental disabilities.  (Pl. Ex. D.)  Norman also attended the Elwyn Institute, which provides "education and care for individuals with special challenges and disadvantages."  (Pl. Ex. F.)  According to the report of Kenneth Goldberg, Ph.D., dated March 1, 2003, Norman "is a mentally deficient individual who attended specialized schools for the developmentally disabled," and is only capable of reading at a 3rd grade level.  (Pl. Ex. G at 3-4.)  While, he lives by himself and cares for his two cats, Norman sends all bills and other seemingly important documents to his family members.  (Id., Pl. Ex. FF.)

This case arises out of events that transpired in a

---

[1] The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

collection action brought in the Superior Court of New Jersey, Law Division, by Defendant New Century Financial Services Inc. ("NCFSI"), through its counsel, Defendant Pressler & Pressler, LLP ("Pressler"), against Norman. The collection action was a result of a default on Norman's Citibank credit card, due to unpaid charges and fees totaling $1,845.60. (Sombers Aff. ¶ 4.) NCFSI purchased the defaulted Citibank account and referred it to Pressler for collection. (Id. at ¶ 5.)

On March 16, 2005, Pressler sent a notification to Norman pursuant to the Fair Debt Collection Practices Act, 11 U.S.C. § 1692g, encouraging him to contact Pressler to make arrangements to pay the debt. (Pressler Aff. Ex. 21.) On August 22, 2005, Pressler filed suit against Norman in the Superior Court of New Jersey, Law Division, Camden County, Special Civil Part under docket number DC-010592-05. (Pressler Aff. ¶ 2.) Service was effected on August 25, 2005, by the clerk mailing copies by certified and regular mail to Norman. (Hurdleston Br. Ex. I.)[2]

On September 12, 2005, Norman's brother, Christopher Hurdleston ("Christopher"), filed a letter entitled "Answer to Complaint of Summons." (Pressler Aff. Ex. 1.) In the letter, Christopher stated, among other things, that on behalf of his

_____

[2] While Defendants' papers indicate that the state court claim was filed on August 12, 2005, (see Pressler Aff. ¶ 2), the copy of the summons and complaint attached to Plaintiff's papers clearly indicate that it was filed on August 22, 2005. (Pl. Ex. I.)

brother he was filing a response of "Not Guilty" and that he wanted the court to hold a hearing, that Norman was "mentally handicapped and has been so for his 43 years of life," that Norman had minimal personal property and his sole source of income is Social Security Disability, for which Christopher was the representative payee, and therefore, Pressler's chances of recovering anything from Norman were "**very poor, at best.**"  (Id.) In response, James Padgett, a representative of Pressler, wrote a letter to Norman on September 16, 2005, requesting that he contact Pressler's office to discuss a possible resolution.[3] (Id. at Ex. 2.)

On September 20, 2005, Pressler moved to strike Christopher's answer because Christopher was neither an attorney, a person qualified to appear in court, nor a real party in interest, and enter default in the case.  (Id. at Ex. 3.)  The motion to strike was unopposed and on October 11, 2005, the Hon. Lee B. Laskin, J.S.C., granted the motion, striking the answer and entering default.  (Id. at Ex. 4.)

On December 8, 2005, Pressler filed a motion for the entry of default judgment.  (Id. at Ex. 5.)  The Certification of Proof that accompanied the motion states that "no defendant is an

---

[3] The letter indicates that Padgett intended "to contact [Norman] by telephone; however, [Padgett's] office is not in possession of a contact number."  (Pressler Aff. Ex. 2.)

4

infant or mentally incapacitated person."[4]  (Id.)  On December
27, 2005, Judge Laskin granted the motion and entered judgment in
favor of NCFSI in the amount of $2801.60, plus costs.  (Id. at
Ex. 6.)  After three failed attempts to deliver a certified copy
of the judgment to Norman's address, on January 13, 18, and 28,
2006, it was returned by the Unites States Postal Service as
"unclaimed" on February 2, 2006.  (Id.)

On January 20, 2006, Pressler sent Norman, by regular and
certified mail, an "Information Subpoena" and a questionnaire in
order to ascertain what assets he might have to satisfy the
default judgment.  (Id. at Ex. 7.)  The Information Subpoena
informs the recipient that "If this judgment has resulted from a
default, you may have the right to have this default judgment
vacated by making an appropriate motion to the court."  (Id.)
Christopher telephoned Pressler in response to the information
subpoena on January 27, 2006, but was informed that no one from
Pressler could discuss the matter with him without Norman's
written authorization.  (Id. at Ex. 22.)  On January 31, 2006,
Christopher faxed Pressler a signed power of attorney for
Norman.[5]  (Id. at Ex. 8.)  Christopher confirmed that Pressler

---

[4] This certification was required by N.J. Ct. R. 6:6-3.

[5] The power of attorney letter is dated June 15, 2004, is
generically addressed "To Whom it May Concern," and broadly
states that: "This shall confirm that I give my authorization and
Power of Attorney to my brothers Charles Hurdleston and
Christopher Hurdleston, in an effort to resolve, handle and

received the authorization on February 2, 2006, (Id. at Ex. 23), and later that day returned the questionnaire to Pressler.  (Id. at Ex. 9.)  On the questionnaire, Christopher indicated that Norman had a bank account with Wachovia, and personal property valued at less than $500.  (Id.)

On February 6, 2006, Pressler sent Norman a letter indicating that a question on the form regarding exempt funds had not been answered.  (Id. at Ex. 10.)  Christopher answered the question, indicating that Norman received $986 per month in Social Security Benefits, and faxed the form back to Pressler on February 15, 2006.  (Id. at Ex. 11.)  However, Christopher failed to attach the required copies of the bank statements indicating that Norman's bank account indeed contained only the Social Security funds.  (Id.)

On February 7, 2006, Pressler requested that the court execute a levy against Norman's bank account and personal property.  (Pressler Aff. at ¶ 15.)  On February 21, 2006, the Superior Court issued a writ of execution for a court officer to levy on Norman's Wachovia bank account and the possessions in his home.  (Pressler Aff. Exs. 13, 14.)  On March 6, 2006, Court Officer George Cook ("Cook") "visited Norman's apartment and viewed his belongings and determined they were not worth levying

discuss any and all of my personal affairs.  You may discuss my case with them as you would discuss it with me."  (Pressler Aff. Ex. 8.)

upon." (Id. at Ex. 16 at ¶ 4.) Cook returned the writ noting that there were insufficient funds in Norman's bank account and that the furniture in his apartment was not worth levying, and informed Pressler that he intended to return the writ as unsatisfied in 30 days. He also indicated that he left a "Goods & Chattel notice."[6] (Id. at Ex. 13.) The following day, Cook returned the writ marked as "Unsatisfied."[7] (Id. at Ex. 14.) At

---

[6] Cook left a "Goods & Chattels Levy" letter at Norman's home on March 6, 2006. This document appears on Superior Court letterhead, and is signed by Cook on a signature line stating he is a "Court Officer." The typed text on the document reads:

> On _____, a court officer levied on all furniture, appliances, office equipment and/or supplies located at this address belonging to the named defendant(s). A Sergeant-at-Arms "Sale" may follow if judgment is not satisfied.
>
> To make arrangements to satisfy the judgment, contact Court Officer        at        between 7:30 a.m. and 9:00 a.m. within five (5) working days.
>
> Thank you.

_____
Court Officer

(Pressler Aff. Ex. 15.)
Cook filled in the date of "3/6/06" as well as his name and phone number by hand. He also left a number at which he could be reached in the afternoon, as well as a notation that "It is very important that I talk to you before further action is taken. Please do not ignore this notice." (Id.)

Cook explains the purpose of the "Goods & Chattel Levy" letter in his affidavit: "This letter is a letter of my own creation that is used in situations when I am unable to effectuate a levy. Its purpose was to hopefully result in a payment arrangement. I am not a paid employee. Per statute, I only receive a percentage of what I collect." (Id. at Ex. 16 ¶ 7.) Despite leaving this letter, Cook states in no uncertain terms that he "made no levy, constructive or actual, upon any property of Norman Hurdleston." (Id. at ¶ 8.)

[7] Although N.J. Ct. R. 6:7-1(a) requires the court officer to give 30 days notice to the creditor, or its attorney, prior to

no point was any property or money of Norman's actually taken.

On December 27, 2006, Christopher filed a motion seeking appointment as Norman's guardian *ad litem* and to vacate the state court judgment.  The motion was granted on January 9, 2007. (Pressler Aff. ¶¶ 20-21.)  After a period of discovery, the collection case ultimately went to trial on September 11, 2007. (Id. at ¶ 22.)  At trial, both parties were represented by counsel.  (Id.)  Judge Laskin found that Norman did have the requisite mental capacity to enter into a credit card agreement with Citibank, and therefore entered judgment for $1,845.60 in favor of NCFSI.[8]  (Id. at ¶ 23; Pressler Aff. Ex. 19 at 170-172.)

---

returning the execution unsatisfied, Cook felt that waiting the full 30 days "would serve no useful purpose" in light of a conversation he had with Christopher.

[8] The testimony led Judge Laskin to conclude "that he's not mentally retarded, he's not mentally incompetent.  He may have special needs, no question about that.  But, certainly he is not mentally deficient."  (Pressler Aff. Ex. 19 at 167:1-4.)  After reviewing the rest of the testimony on the record, Judge Laskin continued:

> I've just reviewed all that testimony.  I'm convinced that Mr. Hurdleston is perfectly normal.  Does he have problems mentally?  Yes.  Is he slow?  Yes.  Does he have special needs?  Yes.  Does that make him though so incompetent that he couldn't contract?  The answer is obviously no.  He contracts all the time.  He entered into a lease for his apartment.  That's entering into a contract.
> He knew enough to get a co-signer.  He said, I don't like my dad, but my dad was always on my lease.  He needed that extra credit.  This is not somebody who is an incompetent or even close to it in my opinion, at least not legally.  Socially, from a human relations viewpoint, that's different.

(Id. at 170:21-171:9.)

Norman, through his guardian *ad litem*, Christopher, filed the Complaint in the instant case on July 17, 2007, after the original state court judgment was vacated, but before the trial on the merits was held.  Count I of the Complaint alleges that Pressler and NCFSI violated of 42 U.S.C. § 1983 by failing to provide proper notice or process prior to seeking the default judgment against Norman in state court or "attempting" to seize his assets.  Count II alleges that the same conduct deprived Norman of substantive rights in violation of the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-1, *et seq.*  Counts III and IV allege common law fraud and negligent misrepresentation, respectively, because Pressler either knew, or should have known, that Norman was mentally incapacitated, and misrepresented the same in its Certification of Proof.

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)).  In deciding a motion for summary judgment, the Court must construe the facts and

inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir.1986).

"'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir.2004) (quoting *Celotex* ).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

### III.

Count I of the Complaint alleges that NCFSI and Pressler violated 42 U.S.C. § 1983 by failing to provide Plaintiff with the necessary process prior to entering the default judgment and attempting to execute the levy on his assets.[9][10]  "In order to

---

[9] Section 1983 provides in pertinent part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law,

prevail on a claim under section 1983, a plaintiff must establish (1) the violation of a federally protected constitutional or statutory right, (2) by state action or action under color of law." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1264 (3d Cir. 1994) (citing 42 U.S.C. § 1983, *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978)).  However, in order to determine that a private party is a state actor , such that it can be found liable under § 1983, a plaintiff must also satisfy a two-part inquiry:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible. . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.  This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State. Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them.

*Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982).

Plaintiff relies on *Jordan* as the basis of his claim both

---

suit in equity, or other proper proceeding for redress . . . .
42 U.S.C. § 1983.

[10] By his own pleadings, Plaintiff seemingly admits that no property was actually taken.  The Complaint states that "Defendants further violated Norman Hurdleston's civil rights under the color of state law by failure to provide meaningful notice, in violation of due process, and then *attempting* to seize his personal assets and bank account."  (Compl. ¶ 41 (emphasis added).)

that Defendants were acting under color of law, and that the execution of a levy without process would violate the Fourteenth Amendment's requirement of procedural due process.  In *Jordan*, the Third Circuit considered Pennsylvania's procedure for judgment by confession, and found that a landlord and its attorneys could have violated the due process rights of the tenant by executing on judgment by confession without pre-deprivation notice or hearing.  There, the landlord's attorneys "took action that caused the Sheriff of Philadelphia to execute on the judgment by garnishing [the tenant]'s bank account" without prior notice.  *Jordan*, 20 F.3d at 1255.  The court concluded "that the entry of the judgment, when coupled with seizure of the [tenant]'s bank account, without prior notice or opportunity to be heard, does violate the Due Process Clause of the Fourteenth Amendment to the Constitution."  *Id.*

     As an initial matter, to the extent Plaintiff's claim is based on the entry of the judgment alone, it fails to meet the state action requirement.  The "entry of the judgment is not a state action involving the force of law to an extent sufficient to hold that private persons become state actors and therefore can be liable under section 1983."  *Jordan*, 20 F.3d at 1266.[11]

_____

     [11] As the court noted in *Jordan*:
     This is not to say that entry of the judgment lacks consequences.  For example, its entry imposes a lien on any real estate a debtor may own in the county in which it is entered, but this consequence seems to us analogous

Plaintiff also bases Count I on the theory that Defendants violated § 1983 by "attempting to seize his personal assets and bank account" when Pressler requested that the court officer execute a levy without "meaningful notice."[12]   (Compl. ¶ 41.) The Third Circuit has held:

> [A] private individual who enlists the compulsive powers of the state to seize property by executing on a judgment without pre-deprivation notice or hearing acts under color of law and so may be held liable under section 1983 if his acts cause a state official to use the state's power of legal compulsion to deprive another of property.

*Jordan*, 20 F.3d at 1267.   Therefore, invoking the power of the court the way Pressler did could satisfy § 1983's state action requirement.   However, Plaintiff's argument suffers from a critical flaw: Norman was never actually deprived of any

---

to the entry of a lien in the office of the Recorder of Deeds.   It involves no immediate seizure or deprivation of property under force of law.
*Jordan*, 20 F.3d at 1266 n.17.

[12] Despite the fact that Defendants served Norman at all the stages of the state court proceedings, up to and following te entry of the default judgment, Plaintiff asserts that notice was not "meaningful because Norman is mentally incapacitated. Plaintiff relies on *Covey v. Town of Somers* for the principle that "[n]otice to a person known to be incompetent who is without the protection of a guardian does not measure up to [the] requirement [of process]."   351 U.S. 141, 146 (1956).   In *Covey*, a woman had her home foreclosed upon as a result of a tax lien, despite being "known by the officials and citizens of the Town of Somers to be a person without mental capacity to handle her affairs of to understand the meaning of any notice served upon her."   *Id.* at 146.   However, as discussed below, unlike in *Covey*, Norman was never actually deprived of any property, so the Court need not consider whether the requirement of process was adequately met in the instant case.

property.

While Plaintiff argues that a levy actually occurred on his personal property, despite seemingly contrary pleadings, the record is clear that no such levy actually took place.  Plaintiff relies on the "Goods & Chattels Levy" letter that was left at Norman's home by the court officer.[13]  However, it is clear that when the court officer actually returned the execution it was marked as "Unsatisfied."  (Id. at Ex. 14.)  Officer Cook's affidavit, as well as the hand written notations on the execution, indicate Cook's belief that Norman had no assets on which he could levy, and that "holding the writ open was worthless."  (Pressler Aff. Ex. 14; Id. at Ex. 16 ¶ 6.)  Furthermore, there is no evidence whatsoever that any property of Norman's was actually taken, or even in danger of being taken, by the court officer.  As noted above, the Third Circuit distinguishes between even the entry of a lien against one's property, and an actual "seizure or deprivation of property under force of law."  *Id.* at 1266 n.17.  While it may be true that Norman's mental deficiencies should have prevented the original entry of the default judgment, Plaintiff has failed to address the clear language in *Jordan* that there must actually be a

---

[13] *See* Note 6, *supra*, describing the letter and its purpose.

deprivation of property.[14]  *Jordan*, 20 F.3d at 1266-67.

Accordingly, because there was no actual deprivation of property, no due process rights provided by the Fourteenth Amendment were violated.  As such, Plaintiff has failed to establish "the violation of a federally protected constitutional or statutory right" necessary to succeed on a claim under § 1983, and Defendants's Motion will be granted, and Plaintiff's Cross-Motion will be denied with regard to Count I.

### IV.

Count II of the Complaint alleges a violation of the NJCRA. N.J. Stat. Ann. § 10:6-1, *et seq.*[15]  Specifically, Plaintiff invokes section 10:6-2(c), which provides:

Any person who has been deprived of any substantive due

---

[14] Additionally, the Court notes that the original default judgment was ultimately vacated prior to the filing of the instant Complaint.  Then, less than two months after filing the Complaint, the state court held a trial to determine whether the debt was in fact owed and found against Plaintiff, and entered judgment for NCFSI.  (Pressler Aff. Ex. 19.)  As such, any procedural deficience there may have been were ultimately rectified.

[15] The Court will retain supplemental jurisdiction over the remaining state law claims in Counts II, III, and IV pursuant to 28 U.S.C. § 1367.  Discovery in this case is closed, and the parties were prepared to have their Joint Final Pretrial Conference with the Magistrate Judge pending the disposition of the instant Motions.  Retaining supplemental jurisdiction and disposing of the remaining state law claims on the merits will have the effect of conserving judicial resources.  *See New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1510 (3d Cir. 1996).

> process or equal protection rights, privileges or
> immunities secured by the Constitution or laws of the
> United States, or any substantive rights, privileges or
> immunities secured by the Constitution or laws of this
> State, or whose exercise or enjoyment of those
> substantive rights, privileges or immunities has been
> interfered with or attempted to be interfered with, by
> threats, intimidation or coercion by a person acting
> under color of law, may bring a civil action for damages
> and for injunctive or other appropriate relief. The
> penalty provided in subsection e. of this section shall
> be applicable to a violation of this subsection.

N.J. Stat. Ann. § 10:6-2(c). "[A] person may bring a civil action under the [NJCRA] in two circumstances: (1) when he's deprived of a right, or (2) when his rights are interfered with by threats, intimidation, coercion or force." *Felicioni v. Admin. Office of Courts*, 404 N.J. Super. 382, 400 (App. Div. 2008).

As was discussed about in Part III, *supra*, Plaintiff did not suffer any deprivation of a substantive right because he was never actually deprived of his property. Similarly, no substantive right was "interfered with by threats, intimidation, coercion or force." *Id.* Plaintiff argues that the entering of default judgment and the attempt to levy, when it was known to Pressler that Norman had at least some mental deficiencies, violated his due process rights. However, if anything, Plaintiff was perhaps deprived of procedural due process, but the statute's clear language states that the NJCRA only protects against deprivation or interference with *substantive* due process

16

rights.[16]  N.J. Stat. Ann. § 10:6-2(c).  Accordingly, Defendants
are entitled to summary judgment on Count II. And Plaintiff's
Cross-Motion will be denied.

## V.

Counts III and IV of the Complaint allege common law fraud
and negligent misrepresentation, respectively.  To support a
claim of common law fraud, Plaintiff must prove: "(1) a material
misrepresentation of a presently existing or past fact; (2)
knowledge or belief by the defendant of its falsity; (3) an
intention that the other person rely on it; (4) reasonable
reliance thereon by the other person; and (5) resulting damages."
*Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)
(citing *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619,
624-25 (1981)).  The elements of negligent misrepresentation are
similar to those of common law fraud, except negligent
misrepresentation does not require scienter.  "Negligent
misrepresentation is . . . [a]n incorrect statement, negligently
made and justifiably relied on, [and] may be the basis for
recovery of damages for economic loss . . . sustained as a

---

[16] The NJCRA's legislative history also makes it clear that
it was only intended to protect substantive rights.  *See* Jason R.
Martucci, Note, *When Should the Victor Receive the Spoils?:
Determining the Proper Threshold for Attorney Fee Awards and the
Prevailing Plaintiff Standard Under the New Jersey Civil Rights
Act's Fee-Shifting Provision*, 30 **Seton Hall Legis. J.** 163, 167-70
(2005) (summarizing the NJCRA's legislative history).

consequence of that reliance." *Kaufman v. i-Stat Corp.*, 165 N.J. 94, 109 (2000) (quoting *H. Rosenblum, Inc. v. Adler*, 93 N.J. 324, 334 (1983) (internal quotations omitted), *superseded by statute on other grounds*).

Plaintiff bases Counts III and IV on the theory that Pressler either knowingly or negligently misrepresented Norman's "mental incapacity" to the state court through the Certification of Proof (Compl. ¶¶ 50, 58), and as a result of the court's reliance on that misrepresentation, Norman "suffered damages consisting of, but not limited to, the entry of default judgment against him and the invasion of his home pursuant to a levy." (Compl. ¶¶ 55, 63.)  The parties spend a considerable portion of their briefs discussing the issue of whether a misrepresentation made to a third party, either knowingly or negligently, can give rise to a cause of action.  However, it is not necessary for the Court to address that issue.  What Defendants mention only briefly, and Plaintiff fails to address altogether, is the complete absence of proof that Plaintiff actually suffered any recoverable damages.

As has been discussed above, no levy actually occurred, the original default judgment was vacated, and a trial was ultimately held.  At no point was Norman's access to his Social Security benefits or personal property interrupted.  Nor is there any evidence that any of his personal property was damaged as a

result of Officer Cook entering his home.  Simply stated,

Plaintiff has failed to produce evidence that even if the alleged

misrepresentation was actionable, he suffered any recoverable

injury.  As such, Plaintiff is unable to prove an essential

element of both fraud and negligent misrepresentation.

Accordingly, Defendants' will also be granted summary judgment on

Counts III and IV, and Plaintiff's Cross-Motion denied.


**VI.**

Defendants have also filed a Motion for Sanctions pursuant

to Federal Rule of Civil Procedure 11.  Rule 11 states:

> (b) Representations to the Court.  By presenting to the
> court a pleading, written motion, or other paper . . . an
> attorney or unrepresented party certifies that to the
> best of the person's knowledge, information, and belief,
> formed after an inquiry reasonable under the
> circumstances:
>       . . .
>       (2) the claims, defenses, and other legal
> contentions are warranted by existing law or by a
> nonfrivolous argument for extending, modifying, or
> reversing existing law or for establishing new law; [and]
>       (3) the factual contentions have evidentiary support
> or, if specifically so identified, will likely have
> evidentiary support after a reasonable opportunity for
> further investigation or discovery . . . .

Fed. R. Civ. P. 11(b).  Subsection (c) permits the Court to

impose sanctions upon an attorney who has violated the

requirements of subsection (b).  "It is well-settled that the

test for determining whether Rule 11 sanctions should be imposed

is one of reasonableness under the circumstances, the

determination of which falls within the sound discretion of the District Court." *Brubaker Kitchens Inc. v. Brown*, 280 F. App'x. 174, 185 (3d Cir. 2008) (citing *Gary v. Braddock Cemetery*, 517 F.3d 195, 201 n.6 (3d Cir. 2008)).

Defendants base their Motion on the theory that Plaintiff's counsel failed to perform competent legal research as required by Rule 11(b)(2) or a reasonable factual inquiry as required by Rule 11(b)(3). However, the Court's granting of summary judgment in favor of Defendants does not in an of itself necessitate the imposition of sanctions. *See Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483-84 (3d Cir. 1987). This is not a case where Plaintiff's attorney did no research and simply copied a form complaint out of a practice manual. *See Clement v. Public Service Elec. and Gas Co.*, 198 F.R.D. 634 (D.N.J. 2001). Rather, Plaintiff's attorney was presented with a situation where he reasonably believed an injustice had been perpetrated upon Norman, and the attorney did his best to fit the facts he was presented with into existing case-law. "The Rule seeks to strike a balance between the need to curtail abuse of the legal system and the need to encourage creativity and vitality in the law." *Gaiardo*, 835 F.2d at 483-84. Plaintiffs reliance on *Jordan*, and attempt to incorporate *Covey*, while ultimately unsuccessful, was not so far fetched as to be considered unreasonable. Likewise, there is at least some precedent in New Jersey law upon which Plaintiff could

20

have argued for imposition of liability for misrepresentations made to, and relied upon by, a third party.

Similarly, the Court also notes that it was not until discovery was allowed to take place that it was clear that not only did Officer Cook not take any of Norman's property, but that he did not even intend to effectuate the levy by leaving the "Goods & Chattel Levy" letter with Norman.  Additionally, at the time the Complaint was filed, the state court case had not been completely resolved, and it was still contested whether Norman even owed the original credit card debt.

Overall, while there were many weaknesses in Plaintiff's case, none of his attorney's conduct rises to levels of unreasonableness to warrant sanctions pursuant to Rule 11.  *See Signorile v. City of Perth Amboy*, 523 F. Supp. 2d 428, 435 (D.N.J. 2007) (denying defendant's motion for Rule 11 sanctions despite granting summary judgment in defendant's favor). Accordingly, Defendants' Motion for Sanctions will be denied. The Court will similarly deny Plaintiffs request for legal fees or other expenses incurred in responding to this Motion, as they are also unwarranted.

## VII.

For the reasons discussed above, Defendants' Motion for Summary Judgment will be granted.  Plaintiff's Cross-Motion for

21

Summary Judgment, and Defendant's Motion for Sanctions will be denied.


Dated: June 29, 2009


                                    s/ Joseph E. Irenas
                              **Joseph E. Irenas, S.U.S.D.J.**